UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Taylor Bowker,<br><br>          Plaintiff,<br><br>v.<br><br>M/V "Tatu," her engines, bowsprit, anchor, cables, chains, rigging, tackle, apparel, furniture and all accessories, hereunto appertaining and belonging to her, in rem; Platinum Premier Corporation Limited, in personam; Texas Oil and Gas Limited LLC, in personam; Texas Oil & Gas LTD, in personam, doing business as Texas-Nevada Oil and Gas Limited Company; Texen Energy Group PTE LTD, in personam; Tatiana Golovina, in personam; David Michael Sims, in personam, also known as Michael Sims; Marbella Properties, in personam; Does 1-10, in personam; Texen Oil and Gas, Inc., in personam;<br><br>          Defendants,<br><br>Fansea Marine Yacht Sales, Inc.;<br><br>          Claimant. | Case No.: 18cv1986<br><br>**ORDER** |

HAYES, Judge:

  The matters before the Court are: (1) the Motion to Intervene (ECF No. 28) to intervene as Plaintiffs-Intervenors filed by Platypus Marine, Inc. (Platypus) and Loralee

Johnstone Byrnes (Byrnes), (2) the Ex Parte Motion for Default Judgment (ECF No. 38) against Defendants Platinum Premier Corporation Limited (Platinum); Texas Oil & Gas LTD, doing business as Texas-Nevada Oil and Gas Limited Company; Texen Energy Group PTE LTD; Texen Oil and Gas, Inc.; Texas Oil and Gas Limited LLC; and Marbella Properties; and (3) the parties' stipulation and Joint Motion (ECF No. 39) for entry of order granting leave to Platypus and Byrnes to intervene as Plaintiffs-Intervenors.

## I. BACKGROUND

On August 27, 2018, Plaintiff Taylor Bowker (Plaintiff Bowker), initiated this action by filing a Verified Complaint with Request of Supplemental Maritime Rule C Warrant of Arrest against Defendants M/V "Tatu," her engines, bowsprit, anchor, cables, chains, rigging, tackle, apparel, furniture and all accessories, in rem (Defendant Vessel); Platinum Premier Corporation Limited (Defendant Platinum); Texas Oil and Gas Limited LLC; Texas Oil & Gas LTD, doing business as Texas-Nevada Oil and Gas Limited Company; Texen Energy Group PTE LTD; Tatiana Golovina (Defendant Golovina); David Michael Sims, also known as Michael Sims (Defendant Sims); Marbella Properties; Does 1-10; and Texen Oil and Gas, Inc. Plaintiff Bowker brings an in rem maritime claim against the Defendant Vessel seeking to recover earned wages and interest. (ECF No. 1). Plaintiff Bowker alleges that Defendants Golovina and Sims are believed to be "owner[s] and/or operator[s] of the defendant vessel and/or [are] otherwise believed to possess either a direct or indirect financial interest/pecuniary interest in the vessel." *Id.* ¶¶ 9–10. The remaining Defendants are business organizations "with officers, directors and shareholders including, but not limited to TATIANA GOLOVINA and DAVID MICHAEL SIMS (AKA MICHAEL SIMS) . . . entit[ies] which through [their] agents, officers, and representatives, partially paid the Plaintiff and directed the Plaintiffs activities in San Diego, California, and [were] the Plaintiffs employer[s]." *Id.* ¶¶ 4–8. Plaintiff Bowker brings claims of "intentional misrepresentation/fraudulent inducement," negligent misrepresentation, "negligently providing information for the guidance of others," negligence, breach of oral and written contract and the implied covenant of good faith and fair dealing, "failure to

provide accurate wage statements (Labor Code §226)," "failure to provide compensation and California civil penalties," and "violation of California unfair business practices (Business & Professions Code § 17200 et seq.)." *Id.* at 31–66. Plaintiff Bowker claims "damages in excess of $3,823,718." *Id.* ¶ 1.

On August 29, 2018, the Defendant Vessel was arrested. (ECF Nos. 7, 9).

On September 5, 2018, Fansea Marine Yacht Sales, Inc. (Fansea) filed a Statement of Interest stating that Fansea "claims an interest in the Defendant Vessel M/V TATU . . . as the true, sole and bona fide owner of the DEFENDANT VESSEL." (ECF No. 11 at 1).

On September 11, 2018, the Defendant Vessel was released upon the Clerk of the Court's confirmation that the substitute security of $133,550 was deposited in the Registry of the Court. (ECF Nos. 13, 15).

On October 22, 2018, Fansea filed an Answer (ECF No. 16) to the Complaint.

On October 25, 2018, Defendants Sims, Golovina, Platinum, Texas Oil & Gas LTD, Texen Energy Group PTE LTD, Texen Oil and Gas, Inc., Texas Oil and Gas Limited LLC, and Marbella Properties filed returned and executed waivers of service. (ECF Nos. 18–25).

On November 13, 2018, the Magistrate Judge vacated dates and associated deadlines for the Early Neutral Evaluation Conference, the Case Management Conference, and the Telephonic Status Conference. (ECF No. 27). The Magistrate Judge stated, "The Court will reschedule these dates once a majority of the remaining defendants have appeared in the case and the pleadings have been perfected." *Id.* at 1.

On December 10, 2018, Loralee Johnstone Byrnes (Byrnes) and Platypus Marine, Inc. (Platypus) filed the Motion to Intervene as plaintiffs. (ECF No. 28).

The same day, Defendant Sims (ECF No. 29) and Defendant Golovina (ECF No. 30) filed substantively identical Answers to the Complaint. Defendants Sims and Golovina admit allegations that Plaintiff "Bowker worked on the Tatu, but only in the capacity as a captain of the vessel." (ECF Nos. 29–30 at 3). Defendants Sims and Golovina deny various allegations in the Complaint, and specifically deny the allegation that "the Tatu is

owned by one or more of the Defendants." *Id.* at 1. Defendants Sims and Golovina assert the affirmative defense that Plaintiff Bowker is not a "seaman" for purposes of wage calculation under federal maritime law. *Id.* at 13.

On December 13, 2018, the Clerk of the Court entered default as to Defendants Platinum, Texas Oil & Gas LTD, Texen Energy Group PTE LTD, Texen Oil and Gas Inc, Texas Oil and Gas Limited LLC, and Marbella Properties. (ECF No. 37).

On January 14, 2019, Plaintiff Bowker filed an ex parte Motion for Default Judgment against Defendants Platinum, Texas Oil & Gas LTD, Texen Energy Group PTE LTD, Texen Oil And Gas, Inc., Texas Oil And Gas Limited, LLC, and Marbella Properties. (ECF No. 38).

On January 15, 2019, Plaintiff Bowker, Platypus, and Byrnes filed a stipulation and Joint Motion (ECF No. 39) for entry of order granting leave to Platypus and Byrnes to intervene as Plaintiffs-Intervenors.

The docket reflects that no response in opposition to the Motion to Intervene (ECF No. 28) has been filed.

## II. DISCUSSION

### A. Intervention

Rule 24(a) of the Federal Rules of Civil Procedure provides:

> On timely motion, the court must permit anyone to intervene who: ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a), the proposed intervenor must show that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. City of L.A.*, 288 F. 3d 391, 397 (9th Cir. 2002). "Though the applicant bears the burden

of establishing these elements, we have repeatedly instructed that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention.'" *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

Courts "consider three criteria in determining whether a motion to intervene is timely: (1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996). The requirement that the proposed intervenor have a significant protectable interest relating to the subject of the action is generally satisfied if (1) "the interest is protected by law;" and (2) "there is a relationship between the legally protected interest and the plaintiff's claims." *Alisal Water Corp.*, 370 F.3d at 919. Courts weigh three factors in determining the adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

In this case, Byrnes asserts that she "performed work as an ordinary and regular seaman serving as chef on board the vessel, was exposed to the perils of the sea, aided in the navigation of the defendant vessel." (ECF No. 28-2 at 3). Byrnes asserts that she "was not paid her wages or reimbursed for advancements made on behalf of the vessel," and claims "earned wages and interest in the amount of $489,980.40." *Id.* Byrnes asserts that "in 2014, Byrnes, at the request of Defendants, loaned the defendant vessel $250,000," that Defendants owe Byrnes "maritime loans, advances and interest in the amount of $432,575." *Id.*

Platypus asserts it is a Washington entity that "owns a shipyard in Washington State, which builds, repairs, modernizes, services, and maintains yachts, fishing, government and commercial vessels, and services and repairs propulsion and auxiliary systems on vessels."

*Id.* Platypus asserts that "[i]n 2014, Defendants . . . took the vessel to Platypus' shipyard in Port Angeles, Washington," where "in reliance upon the credit of the vessel, Platypus provided repair, maintenance, storage, moorage, and other services to the defendant vessel at the request of defendant Sims, who represented that he was the president of the corporation which owned the defendant vessel." *Id.* Platypus asserts that "[t]he total value of the goods and services provided was $285,508.92," and that "Sims, on behalf of the defendant vessel, agreed to pay an additional $100,000 to Platypus in exchange for Platypus agreeing to defer payment of certain sums owed until January 2015." *Id.* Platypus asserts that "the amount currently owed to Platypus is $92,110, plus $6,200 in pre judgment interest, plus interest at the rate of 10 percent since September 12, 2017." *Id.* Platypus contends that it has a "preferred maritime lien upon the vessel," "[b]ecause the services Platypus provided were repair, maintenance, storage, and moorage of the vessel," qualifying as "necessaries supplied in reliance upon the credit of the vessel." *Id.*

  Byrnes and Platypus seek to "to assert their claims for repairs, seaman's wages, reimbursement of necessaries, and repayment of the loan under 46 U.S.C. §§ 31301, et seq. (maritime liens), 31341-31342 (Necessaries); 10313 (Wages), 10504 (Wages), 10302 (Shipping Articles Agreements), 10502 (Shipping Articles Agreements), 10508 (General Penalties), and 11107 (Unlawful Engagements Void), and to recover from Defendants for their failure to pay outstanding seaman's wages, associated wage penalties, failure to reimburse maritime advancements, failing to pay for necessary services provided by Plaintiffs to the defendant vessel, and for violation of Labor Code §§ 201, 202, 203, 204, 210, 218.5, 226, and 2802, Code of Civil Procedure § 1021.5, 8 CCR § 11040 'Order Regulating Wages, Hours, and Working Conditions in Professional, Technical, Clerical, Mechanical, and Similar Occupations,' and 8 CCR § 11090 'Order Regulating Wages, Hours, Working Conditions in the Transportation Industry,' and violation of Business & Professions Code §§ 17021, 17095, 17200-17208." (ECF No. 28-2 at 4). Byrnes and Platypus contend that contend they satisfy the requirements to intervene under Fed. R. Civ. P. 24(a)(2).

Byrnes and Platypus assert that the Motion to Intervene is timely because it was filed as soon as practicable after they discovered this action. Byrnes and Platypus assert that they did not receive actual or notice of this action because there was no publication of Notice of Action and Arrest in a newspaper pursuant to Fed. R. Civ. P., Supp. Adm. R. C(4) and S.D. Cal. Civ. R. C.1. Byrnes and Platypus assert that dates and deadlines for the Early Neutral Evaluation Conference, Case Management Conference, and Telephonic Status Conference were recently vacated. Byrnes and Platypus contend that any party claiming prejudice "must show that intervention hinders its ability to assert its claims and defenses, not merely that they will be entitled to collect less if a party is permitted to intervene." *Id.* at 5 n.1. Byrnes and Platypus assert that they have significantly protectable interests because they seek to bring maritime claims for repairs, seaman's wages and claims for necessaries. Byrnes and Platypus contend their interests would be impaired if they could not intervene because Plaintiff Bowker could foreclose on his liens in this action without recognition of priority liens of Byrnes and Platypus. Byrnes and Platypus assert that Plaintiff Bowker would not adequately represent their interests because Plaintiff Bowker's interests compete with theirs. Byrnes and Platypus assert that Plaintiff Bowker would not make the arguments supporting the superior liens of Byrnes and Platypus.

The Court finds that Byrnes and Platypus have filed a timely Motion to Intervene given that the record reflects no public notice of this action, and given that Byrnes and Platypus assert that the Motion was filed on the earliest practicable date after being notified of this action. *Cf. DiGiovanni v. Kjessler*, 101 F.3d 76, 78 (9th Cir. 1996) (observing that "the rules governing notice in [the admiralty] context do not specify precisely how the arrested property must be identified," and that a published notice failing to include all prior names of the vessel satisfied Due Process Clause requirements for "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (quotation omitted). The Court finds that the parties would not be prejudiced by intervention given that no party has filed an opposition to the Motion to Intervene, and given that the Magistrate Judge has

vacated the dates and deadlines for the Early Neutral Evaluation Conference, Case Management Conference, and Telephonic Status Conference. *See Glickman*, 82 F.3d at 836. The Court finds that Byrnes and Platypus have significant protectable interests relating to the subject of the action given their claims for amounts owed by the Defendant Vessel. *See Alisal Water Corp.*, 370 F.3d at 919. The Court finds that the existing Plaintiff Bowker may not adequately represent the interests of Byrnes or Platypus because the interests of Plaintiff Bowker, Byrnes, and Platypus are competing. Plaintiff Bowker may not make all of the argument that Byrnes and Platypus would make. *See Arakaki*, 324 F.3d at 1086.

The Court concludes that the intervention of Byrnes and Platypus in this action as plaintiffs is appropriate. The Motion to Intervene (ECF No. 28) is granted. The Joint Motion to Intervene (ECF No. 39) is denied as moot.

### B. Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may grant a default judgment after default has been entered by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2).

The "district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has articulated the following factors for courts to consider in determining whether default judgment should be granted:

> (1) the substantive merit of the plaintiff's claims, (2) the sufficiency of the complaint, (3) the amount of money at stake, (4) the possibility of prejudice to the plaintiff if relief is denied, (5) the possibility of disputes to any material facts in the case, (6) whether default resulted from excusable neglect, and (7) the public policy favoring resolutions of cases on the merits.

8

18cv1986

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The general rule is that cases should be decided on their merits whenever reasonably possible and default judgments are ordinarily disfavored. *Id.*; *see also Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) ("In applying this discretionary standard, default judgments are more often granted than denied.") (quotation omitted).

In the context of a multi-defendant lawsuit, a court "may direct entry of a final judgment as to one or more, but fewer than all . . . parties only if the court determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Relevant factors to consider include "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980). *Frow v. De La Vega*, 82 U.S. 552 (1872) is the "leading case on the subject of default judgments in actions involving multiple defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001). The Court of Appeals has stated,

> The Court held in *Frow* that, where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants. It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants.

*Id.*

The rule in *Frow* applies to defendants who have closely related defenses or are otherwise similarly situated, even if not jointly and severally liable. *Id.* (citing with approval *Gulf Coast Fans v. Midwest Elec. Importers*, 740 F.2d 1499, 1512 (11th Cir. 1984) (default judgment should not be entered against "similarly situated" defendants whose alleged liability, along with that of the remaining defendants, rests on a single contract)); *see also Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1008 (N.D. Cal. 2001) ("*Frow*'s applicability turns not on labels such as 'joint liability' or

'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform."); *Fractional Villas v. Katz*, No. 08CV1317 DMS (POR), 2008 WL 11337364, at *2 (S.D. Cal. Nov. 10, 2008) (declining to enter default judgment where complaint alleged that "each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants," rendering defendants "similarly situated and [with] closely related defenses," and "rais[ing] the inherent problem of inconsistent results because a judgment could be entered as to a defaulting defendant whose liability is contingent on an answering defendant's conduct, only to have the answering defendant be found free of liability").

In this case, Plaintiffs allege that all Defendants "were joint venturers, partners, and/or strategic partners engaged in a joint venture, partnership and/or strategic partnership in purpose, in concerted action, or joint service regarding the operation of the defendant vessel and the employment of the Plaintiff herein." (Compl. ¶ 38, at ECF No. 1). Plaintiff's claims for relief demand judgment against all Defendants "jointly and severally, in an amount in excess of the jurisdictional requirements of this Court together with pre-judgment interest, costs, attorneys' fees, general relief, punitive damages, and for such other and further relief that this Court deems just and proper." *Id.* at 33, 36, 40, 43, 48, 54, 57, 61, 66. Plaintiff alleges that all Defendants are liable for all counts in the Complaint, except the tenth count, for maritime liens, brought only against the Defendant Vessel. *Id.* at 66.

The Court finds that the Defendants are similarly situated and there is a substantial overlap in their potential liability. The Court declines to enter default judgment against Defendants Platinum Premier Corporation Limited; Texas Oil & Gas LTD, doing business as Texas-Nevada Oil and Gas Limited Company; Texen Energy Group PTE LTD; Texen Oil and Gas, Inc.; Texas Oil and Gas Limited LLC; and Marbella Properties. Following the conclusion of the litigation against the remaining Defendants, Plaintiff Bowker may, if appropriate, renew his request for default judgment.

### III. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Intervene filed by Loralee Johnstone Byrnes and Platypus Marine, Inc. (ECF No. 28) is GRANTED.

IT IS FURTHER ORDERED that Platypus and Byrnes shall file and serve the Complaint In Intervention, attached to the Motion for Leave to Intervene (ECF No. 28-3) as [Proposed] Verified Complaint In Intervention, no later than January 31, 2019.

IT IS FURTHER ORDERED that the Joint Motion (ECF No. 39) for entry of order granting leave to Platypus and Byrnes to intervene as Plaintiffs-Intervenors is denied as moot.

IT IS FURTHER ORDERED that the Ex Parte Motion for Entry of Default Judgment (ECF No. 38) filed by Plaintiff Bowker is denied without prejudice.

Dated: January 17, 2019

Hon. William Q. Hayes
United States District Court